**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **LLOYD VERNELL ALLEN JR.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. EP-20-CV-00045-ATB** |
| | § | |
| **ANDREW M. SAUL, COMMISSIONER** | § | |
| **OF THE SOCIAL SECURITY** | § | |
| **ADMINISTRATION,** | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This is a civil action seeking judicial review of an administrative decision.  Jurisdiction is predicated upon 42 U.S.C. § 405(g).  Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff Lloyd Vernell Allen ("Allen") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB").   For the reasons set forth below, the Court orders that the Commissioner's decision be **AFFIRMED**.

# I.      PROCEDURAL HISTORY

On October 20, 2017, Allen filed an application for DIB, alleging a disability onset date on February 15, 2017.  (R. 15).  Allen's application was denied initially on February 21, 2018, and upon reconsideration on July 6, 2018.  (R. 15).  An Administrative Law Judge ("ALJ") held a hearing on March 27, 2019.  (R. 40-67).  The ALJ issued a decision ("Decision") on May 22, 2019,

finding that Allen was not disabled.  (R. 17-26).  On January 3, 2020, the Appeals Council denied

Allen's request for review of the ALJ's Decision. (R. 1-5).

## II.   ISSUE

Allen presents the following issues for review:

1. Whether "[t]he ALJ erred in giving no weight to Mr. Allen's [Veterans'

Administration ("VA")] disability rating of 90%, holding that it was not relevant"[1]

(ECF No. 10, p. 3); and

2. Whether "[t]he ALJ erred in failing to fully consider the medical evidence of

acute stress disorder and adjustment disorder with mixed anxiety and Traumatic

Brain Injury ("TBI").   (*Id.* at 4).

## III.   DISCUSSION

### a.    Standard of Review

This Court's review is limited to a determination of whether the Commissioner's Decision

is supported by substantial evidence, and whether the Commissioner applied the proper legal

standards in evaluating the evidence.  *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d

267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).   Substantial

evidence "means—and means only—'such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting

*Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)).  "Substantial evidence

is more than a mere scintilla and less than a preponderance."  *Masterson*, 309 F.3d at 272 (citation

and internal quotes omitted).   The Commissioner's findings will be upheld if supported by

---

[1] Although Allen alleges the ALJ gave improper weight to the VA disability rating, Allen additionally alleges that the ALJ improperly "rejected the medical opinions of treating and examining doctors alike about Allen's disability and unemployability rating without contradictory evidence from a medical expert of any kind."  (ECF No. 10, p. 4).

substantial evidence.  *Id.*  A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence.  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam) (citation and internal quotes omitted).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's Decision.  *Masterson*, 309 F.3d at 272.  "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve."  *Id.* (citation and internal quotes omitted); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

**b.    Evaluation Process**

The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work.  20 C.F.R. § 404.1520(a)(4).  Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical Vocational Guidelines of the regulations, by vocational expert ("VE") testimony, or by other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  Once the Commissioner makes the requisite showing at step five, the burden shifts back to the claimant to rebut the finding

that there are jobs that exist in significant numbers that the claimant could perform. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

In the present case, the ALJ found that Allen met "the insured status requirements of the Social Security Act through December 31, 2021." (R. 17). In addition, the ALJ found that Allen "ha[d] not engaged in substantial gainful activity since February 15, 2017, the amended alleged onset date."[2] (R. 17). At step two, the ALJ found that Allen:

> has the following sever impairments: lumbar degenerative disc disease status post fusion, cervical degeneration disc disease, degenerative joint disease of the left knee, right hip degenerative joint disease, migraine headaches, left shoulder tendinosis status post-surgery, insomnia, chronic pain syndrome, post-traumatic stress disorder, and major depressive disorder.

(R. 17). Further, the ALJ further found that "[t]he above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28." (R. 17). At step three, the ALJ found that Allen did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairment. (R. 17).

Before proceeding to step four, the ALJ found that Allen:

> has the residual function capacity to perform light work . . . except [Allen] must have a sit/stand option, defined as [Allen] being allowed to sit or stand every one hour, and can occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, occasionally reach overhead bilaterally, must avoid all exposure to hazards such as operational control of moving machinery and unprotected heights, can do no commercial driving, and is limited to simple, routine, and repetitive tasks and superficial interaction with the public and co-workers.

(R. 19). At step four, the ALJ determined that Allen could not perform any past relevant work. (R. 24). Subsequently, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Allen] can perform." (R. 25). Accordingly, the ALJ found

---

[2] At the hearing, the ALJ granted Allen's motion to "amend[] his alleged onset date to February 15, 2017" from October 1, 2016. (R. 15).

that Allen was not disabled within the meaning of the Social Security Act through the Decision date.  (R. 26).

### c.      Analysis

### 1.      *Consideration by ALJ of Allen's VA Disability Rating and its Supporting Medical Opinions*

Allen argues that "[t]he ALJ failed to properly weigh Allen's VA disability rating by erroneously holding that it was irrelevant and would not be addressed . . . despite the VA's extensive medical evaluations and well-crafted opinions."  (ECF No. 10, p. 3).  At the hearing, Allen's attorney cited Allen's "90% VA disability rating that corresponds with his impairments of PTSD, his migraine headaches, his degenerative arthritis of his spine, his tinnitus . . . limited extension of the thigh, [which] corresponds with his hip problems"  (R. 44-45) and reiterated in his brief the "Paralysis of the Median Nerve [and] Limited Fusion of the Knee."  (ECF No. 10, p. 3).

The governing social security regulation provides that disability decisions by governmental agencies, such as the VA, are not binding on the Commissioner because those decisions are made according to separate rules.  20 C.F.R. § 404.1504.  Prior to an amendment to the regulation in 2017, courts held that a VA rating of disability is "evidence that is entitled to a certain amount of weight and must be considered by the ALJ." *Chambliss v. Massanari*, 269 F. 3d 520, 522 (5th Cir. 2001); *see also Loza v. Apfel*, 219 F. 3d 378, 394-95 (5th Cir. 2000) ("A VA rating of 100 percent service connected disability is not legally binding on the Commissioner, but is evidence that is entitled to great weight and should not have been disregarded by the ALJ.").  However, the regulation was amended in 2017 such that the Commissioner does not need to "provide any analysis in [the] determination or decision about a decision made by any other governmental agency or nongovernmental entity about whether [the claimant is] disabled, blind, employable, or

entitled to any benefits."  20 C.F.R. § 404.1504 (binding all social security "claims *filed* . . . on or

after March 27, 2017 . . .") (emphasis added).

In this case, the amended version of 20 C.F.R. § 404.1504 governs because Allen filed for

disability benefits on October 20, 2017.  (R. 15).  Based upon the regulation, the ALJ explained

during the administrative hearing that "the VA disability rating was not relevant and [would] not

be addressed in the [D]ecision."  (R. 45).    Further, during the administrative hearing, the

understanding by Allen's attorney was "that the VA disability rating is not taken into account,"

but that there was "case law within the Fifth Circuit [mentioning] some varying [sic] in that."  (R.

66).  However, Allen's reliance upon Fifth Circuit precedents involves social security claims filed

before March 2017, that are not applicable to this case.  *See*, *e.g.*, *Salmond v. Berryhill*, 892 F. 3d

812, 815 (5th Cir. 2018) (involving a claim filed in 2013); *Lozal*, 219 F. 3d at 380 (involving a

claim filed on June 10, 1993).  The ALJ reiterated in the Decision that "[under the current rules

for evaluating medical evidence in claims filed after March 27, 2017, I did not provide articulation

about evidence that is neither inherently valuable nor persuasive . . . [including] decisions by other

governmental . . . entities."  (R. 23).

Although the Commissioner does not need to "provide any analysis" regarding the VA

disability rating, the Commissioner is required to "consider all of the *supporting evidence*

*underlying* the other governmental agency or nongovernmental entity's decision" that the

Commissioner receives as evidence.  20 C.F.R. § 404.1504 (emphasis added).  Allen's VA records,

which included the disability rating and underlying medical records, were marked as Exhibits 7F

and 8F.  (R. 44).  The ALJ considered and cited throughout his Decision to the VA records that

included the VA disability rating.  For example, the ALJ considered a January 2016 nerve testing

medical record, found in the VA records, and concluded that Allen had a non-severe impairment

of bilateral carpal tunnel syndrome.  (R. 17-18) (citing Ex. 8F).  Furthermore, the ALJ considered

VA records indicating Allen's reported lack of sleep in late 2018 and Allen's denial of headaches

and joint and muscle pain in March and May of 2017.  (R. 21-22) (citing Ex. 8F).  Finally, the ALJ

considered "[s]ubsequent [VA] treatment records [that] noted [Allen's] affect was at times mildly

constricted."  (R. 22) (citing Ex. 7F).  Since the ALJ is only required to *consider* all of the

supporting evidence underlying the VA disability rating, the citation to the VA records, which

included the VA disability rating, is sufficient evidence that "the ALJ's decision is consistent with

the requirements of 20 C.F.R. § 404.1504." *See Vadney v. Saul*, No. CV H-19-1818, 2020 WL

3847844, \*5 (S.D. Tex. June 19, 2020), *report and recommendation adopted*, No. CV H-19-1818,

2020 WL 3839611 (S.D. Tex. July 8, 2020) (holding that multiple citations to the exhibits

containing the VA records throughout the ALJ's decision were sufficient evidence that the ALJ

"considered the VA's disability ratings and the supporting medical records").

      Furthermore, the ALJ properly considered each of the underlying symptoms of Allen's VA

disability rating.  Allen concedes that "[t]he ALJ correctly characterized Allen's chronic PTSD

with Major Depressive Disorder disability restrictions as having 'difficulty remembering,' []

'deficits in judgement,' [and] was only getting 3 hours of sleep."  (ECF No. 10, p. 3 fn 2).

However, Allen contends that the ALJ "ignored the evidence citing that the claimant's treatment

has been routine and conservative only."  (*Id.*).  Despite this contention, Allen fails to identify any

evidence in the record that the ALJ's Decision ignored regarding the level of treatment Allen

received.  (*Id.* at 3-4).  On the contrary, the ALJ did consider Allen's treatment for PTSD, which

"included attendance at a support group through the Department of Veteran Affairs."  (R. 22).  In

addition, the ALJ noted that the VA records of treatment reflected that the cumulative effect of

Allen's impairments "was at times *mildly* constrict[ing]."  (R. 22) (emphasis added).  Finally, the

ALJ considered the report in the record from Allen's January 2018 psychological consultative examination that "noted [Allen] had no history of inpatient psychiatric treatment." (R. 23).

Regarding Allen's migraine headaches, the ALJ concluded that Allen had the severe impairment of migraine headaches. (R. 17); *see also* (R. 20) ("[t]he record supports a finding of . . . migraine headaches"); (R. 20-22) (outlining the history of Allen's migraine headaches). For Allen's degenerative arthritis of the spine, the ALJ concluded that lumbar degenerative disc disease post fusion and cervical degenerative disc disease were severe impairments for Allen. (R. 17). Additionally, the ALJ considered evidence of back pain, a L4/L5 fusion, and degenerative disc disease in his Decision. *See* (R. 20).

Further, the ALJ's Decision reflects consideration of the evidence of paralysis of the median nerve because the ALJ found, while citing to the VA records, a non-severe impairment of bilateral carpel tunnel syndrome where the symptoms are caused by compression of the median nerve in the carpel tunnel. (R. 17-18). In considering Allen's limited fusion of the knee, the ALJ determined Allen had a severe impairment of "degenerative joint disease of the left knee." (R. 17). Additionally, the ALJ considered Allen's testimony regarding his left knee pain and his use of a brace on his knee. (R. 20). Further, the ALJ determined his finding was supported in the record by Allen's "history of … left knee pain," Allen's "left knee autologous chondrocyte implantation," and the "reduced range of motion in [Allen's] left knee." (R. 20-21).

Regarding Allen's tinnitus, the ALJ considered the physical consultative examination by Dr. Augustine Eleje that stated Allen "ha[d] no limitations with . . . hearing." (R. 23). The ALJ determined that "[t]he record contain[ed] no evidence that is inconsistent with [Dr. Eleje's] statement as to the absence of . . . hearing . . . limitations." (R. 23). Additionally, there is evidence within the VA records of no tinnitus. *See*, *e.g.*, (R. 1264) ("Ears: no change in hearing, no tinnitus,

no bleeding, no vertigo."); (R. 1519) ("Ears – External ear and canal" marked "Normal"); (R. 1604) ("Ears: denies any decreased hearing, earache or ear discharge").

Finally, regarding Allen's limited extension of the thigh, which Allen's attorney asserted at the hearing "corresponds with [Allen's] hip problems" (R. 44-45), the ALJ determined that Allen had the severe impairment of "right hip degenerative joint disease." (R. 17). To reach this determination, the ALJ considered Allen's testimony of "hip pain" and the record's support for "chronic right hip pain." (R. 20). The ALJ further considered three MRIs from 2016 of Allen's right hip that found "[a] labral tear and mild subchondral sclerosis consistent with minimal early osteophytic changes," "mild bilateral joint space narrowing and minimal osteoarthritis," and "mild joint space narrowing and minimal osteoarthritis." (R. 21). As a result, the ALJ determined that Allen's "history of back and knee surgeries, degenerative changes in his right hip, and residual pain in those areas, [Allen] will require a sit/stand option as stated in his residual functional capacity." (R. 23); (R. 24).

The ALJ in this case had no obligation to provide "any analysis in his determination or decision" regarding the VA disability rating for a claim filed after March 2, 2017. 20 C.F.R. § 404.1504. Additionally, the ALJ's citation to the exhibits containing the VA records and the ALJ's determination of Allen's severe and non-severe conditions that correspond with the symptoms in the VA record are sufficient evidence that the ALJ properly "consider[ed] all of the supporting evidence underlying" the VA disability rating. Accordingly, the Court finds that the ALJ satisfied his obligations under 20 C.F.R § 404.1504 by properly considering the medical evidence *underlying* Allen's VA disability rating, while simultaneously not giving weight to the VA disability *rating*.

   2.   *Consideration by ALJ of Allen's acute stress disorder, adjustment disorder with mixed anxiety, and Traumatic Brain Injury ("TBI")*

Allen's second contention is the ALJ failed "to fully consider the medical evidence of acute stress disorder and adjustment order with mixed anxiety and Traumatic Brain Injury ("TBI")" (collectively "Disorders").   (ECF No. 10, p. 4).   Allen contends that the William Beaumont Medical Center ("WBAMC") records reflect these conditions, and that the ALJ erred in failing to consider the Disorders as severe impairments. (ECF No. 10, p. 4-5).

"Severe impairment has a specific—if somewhat surprising—meaning."  *Salmond*, 892 F. 3d at 817.  The Fifth Circuit has repeatedly held that "[a]n impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Id.* (quoting *Loza*, 219 F.3d at 391) (emphasis and brackets in original); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  Next, "once a severe impairment is determined to exist, all medically determinable impairments [including non-severe ones] must be considered in the remaining steps of the sequential analysis."  *Burqette v. Colvin*, No. CIV. A. 12-1155, 2013 WL 3776291, at *3 (W.D. La. July 15, 2013).

Furthermore, the ALJ's determination of non-severity cannot constitute reversible error when the potential error in the determination is negated by the ALJ's analysis beyond step two of the evaluation process.  *Horn v. Colvin*, No. CV G-15-126, 2017 WL 476740, at *3 (S.D. Tex. Feb. 2, 2017);  *see, e.g.*, *Jones v. Bowen*, 829 F. 2d 524, 527 n. 1 (5th Cir. 1987) ("Appellant also advances the rather disingenuous argument that the district court applied the incorrect legal standing in determining the severity of his impairments . . . [when the ALJ] proceeded through the sequential evaluation to conclude at the fourth and fifth levels that appellant could perform past relevant work and could perform a full range of light work activities." ); *Chaparro v. Bowen*, 815

F. 2d 1008, 1011 (5th Cir. 1987) ("this case did not turn on whether or not [claimant's] impairment was severe, but on whether [claimant] could return to his past relevant work . . . Thus, [claimant's] argument is irrelevant to the disposition of his case.").

In this case, Allen asserts the "records reflect the [Disorders] for the period January 7, 2016 – March 13, 2019)." (ECF No. 10, p. 4) (*citing* R. 781-84, 800, 802, 804, 858). Allen was examined for TBI and diagnosed with anxiety in October 2016. (R. 1109-10). These records show that the Disorders predate Allen's alleged onset date of February 15, 2017. (R. 15). Contrary to Allen's assertion, Allen's ability to work despite the Disorders further supports the ALJ's finding of not disabled. *See Vaughan v. Shalala*, 58 F. 3d 129, 131 (5th Cir. 1995); *Fraga v. Bowen*, 810 F. 2d 1296, 1305 & n. 11 (5th Cir. 1987) (ability to work despite pre-existing condition supports the ALJ's finding of not disabled). Additionally, Allen's reliance on the "ongoing diagnos[es]" of the Disorders is misplaced because "his diagnos[es] constitute[] only part of the evidence the Secretary was required to, and did, weigh in determining whether [Allen] was disabled." *Johnson v. Sullivan*, 894 F. 2d 683, 685 (5th Cir. 1990). A "diagnosis of symptoms or a condition, without more, is insufficient to establish that a condition is "severe." *Musgrove v. Astrue*, No. 3-07-CV-0920-BD, 2009 WL 3816669, at *3 (N.D. Tex. 2009). Instead, the ALJ fully accounted for all of Allen's supported impairments in his residual functioning capacity ("RFC") assessment, including those that were not severe. (R. 17-19).

Allen was examined for TBI by Dr. Lloveras of the El Paso Sleep Disorder Center in October 2016. (R. 1139). The symptoms resulting from Allen's TBI were headache, insomnia, memory/cognitive symptoms, and mood symptoms. (R. 1145-46). The ALJ determined in the Decision that Allen had the severe impairments of "migraine headaches" and "insomnia." (R. 17). Further, the ALJ considered Allen's diagnosis of PTSD, for which Allen reported, *inter alia*,

symptoms of "poor memory."  (R. 22).  However, the ALJ concluded Allen had a "moderate limitation" "[i]n understanding, remembering, or applying information" due to the record showing that Allen "had intact fund of information and memory at his psychological consultative examination." (R. 18) (citing 1161-67).  Finally, the ALJ considered the "mood symptoms" from Allen's TBI by finding severe impairments of "post-traumatic stress disorder[] and major depressive disorder."  *Compare* (R. 17), *with* (R. 1280) (describing Allen's mood symptoms as "symptoms of anxiety, irritability, and being easily annoyed. [Allen a]lso states depression and a prior diagnosis or evaluation for PTSD.").

Regarding Allen's alleged mental impairments of acute stress disorder and adjustment disorder with mixed anxiety, the ALJ properly considered the impact of these conditions through the ALJ's finding of Allen's PTSD as severe.  The ALJ addressed descriptions of what work Allen could perform from a mental standpoint by:  1) the consultative psychological examiner Dr. Randall Rattan (R. 23-24); 2) Dr. Jessaka Fife (R. 22, 1223-24); and 3) State agency consultants Dr. Leela Reddy and Dr. Matthew Turner (R. 24).  However, the ALJ found greater mental limitations than these assessments due to Allen's severe condition of PTSD.  (R. 19, 24).  Consequently, since the ALJ assessment of mental limitations due to PTSD was greater than the less restrictive mental assessments of acute stress disorder and adjustment disorder with mixed anxiety, the Court finds that the ALJ's assessment of mental RFC was supported by substantial evidence.  *See Hall v. Berryhill*, No. CV 16-15485, 2017 WL 2385484, at *6 (E.D. La. May, 18, 2017) ("the Court is hard-pressed to see how Plaintiff was prejudiced by the ALJ's adoption of an RFC assessment that was *even more restrictive* than that of the consultative evaluator") (emphasis added) *report and recommendation adopted*, No. CV 16-15485, 2017 WL 2391068 (E.D. La. June 1, 2017).

Allen does not identify any medical evidence in the record showing that he had greater mental limitations than the ALJ determined. *See* (ECF No. 10, p. 4-5).  Determination of a claimant's RFC is "the sole responsibility of the ALJ."  *Taylor v. Astrue*, 706 F. 3d 600, 602-03 (5th Cir. 2012).  In determining Allen's mental RFC, the ALJ relied on the opinions of the consultative psychological examiner, other examining sources, and State agency consultants. After considering the records, the ALJ assessed *more restrictions* in the mental RFC than the examining doctors and State agency consultants found.  *See* (R. 23-24).  Substantial evidence in the record supports the ALJ's mental RFC assessment and final Decision.  Accordingly, the Court finds that the ALJ properly considered all of Allen's impairments when assessing his RFC.

## IV.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's Decision denying benefits is **AFFIRMED**.

**SIGNED** and **ENTERED** this 14th day of August, 2020.

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**